# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PRINCETON DIGITAL IMAGE CORPORATION, | : |
| Plaintiff, | : |
| v. | : C.A. No. 13-239-LPS |
| OFFICE DEPOT INC., | : |
| Defendant. | : |
| PRINCETON DIGITAL IMAGE CORPORATION, | : |
| Plaintiff, | : |
| v. | : C.A. No. 13-287-LPS |
| J.C. PENNEY COMPANY, INC., | : |
| Defendant. | : |
| PRINCETON DIGITAL IMAGE CORPORATION, | : |
| Plaintiff, | : |
| v. | : C.A. No. 13-288-LPS |
| QVC INC., | : |
| Defendant. | : |
| PRINCETON DIGITAL IMAGE CORPORATION, | : |
| Plaintiff, | : |
| v. | : C.A. No. 13-289-LPS |
| SEARS HOLDINGS COMPANY, | : |
| Defendant. | : |

| PRINCETON DIGITAL IMAGE CORPORATION, | : | |
| --- | --- | --- |
| Plaintiff, | : | |
| v. | : | C.A. No. 13-326-LPS |
| LIMITED BRANDS, INC., | : | |
| Defendant. | : | |
| PRINCETON DIGITAL IMAGE CORPORATION, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 13-330-LPS |
| GAP INC., | : | |
| Defendant. | : | |
| PRINCETON DIGITAL IMAGE CORPORATION, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 13-331-LPS |
| WILLIAMS-SONOMA INC., | : | |
| Defendant. | : | |
| PRINCETON DIGITAL IMAGE CORPORATION, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 13-404-LPS |
| COSTCO WHOLESALE CORP., | : | |
| Defendant. | : | |

| PRINCETON DIGITAL IMAGE | : |
| CORPORATION, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : C.A. No. 13-408-LPS |
| | : |
| NORDSTROM.COM LLC, | : |
| NORDSTROM.COM INC., and NORDSTROM | : |
| INC. | : |
| | : |
| Defendants. | : |

Sean T. O'Kelly, George Pazuniak, and Daniel P. Murray, O'KELLY ERNST & JOYCE, LLC, Wilmington, DE

Attorneys for Plaintiff.

Kelly E. Farnan, RICHARDS LAYTON & FINGER, Wilmington, DE

Tara D. Elliott, Rachel Weiner Cohen, and Brittany Amadi, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, DC

Attorneys for Intervenor Adobe Systems Incorporated.

**MEMORANDUM OPINION**

August 1, 2017
Wilmington, Delaware

[signature]

**STARK, U.S. District Judge:**

On June 6, 2011, Adobe Systems Incorporated ("Adobe") and Princeton Digital Image Corporation ("PDIC") entered into a licensing agreement concerning U.S. Patent No. 4,813,056, whereby PDIC agreed not to sue Adobe or its licensees, customers, and end users on any of PDIC's patents. (*See* C.A. No. 13-239-LPS D.I. 196 Ex. 1)[1] In 2013, PDIC brought numerous suits against internet retailers ("Defendants") for infringement of the '056 patent, based on the encoding of JPEG images on their websites. (*E.g.*, D.I. 1) A number of the defendants claimed to be Adobe's licensed customers and sought indemnity and defense from Adobe. As a result, Adobe moved to intervene in 2014. (D.I. 11) In May 2015, the Court granted Adobe's motion, and Adobe filed a complaint in intervention, alleging, among other things, that PDIC breached its contract with Adobe by suing Adobe's customers. (D.I. 47) Subsequently, PDIC dismissed with prejudice the underlying patent infringement claims, leaving only the claims between Adobe and PDIC. (*E.g.*, D.I. 56)

Presently before the Court are PDIC's motion to exclude certain expert testimony and motion for summary judgment. A jury trial is scheduled to begin August 21, 2017.

For the reasons stated below, the Court will deny PDIC's motion to exclude expert opinions and grant in part and deny in part PDIC's motion for summary judgment.

## I. LEGAL STANDARDS

### A. *Daubert* Motion

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the Supreme Court explained that Federal Rule of Evidence 702 creates "a gatekeeping role for the

---

[1]Unless otherwise noted, the references to the docket are to C.A. No. 13-239-LPS.

1

[trial] judge" in order to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Rule 702(a) requires that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Expert testimony is admissible only if "the testimony is based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d).

There are three distinct requirements for proper expert testimony: (1) the expert must be qualified; (2) the opinion must be reliable; and (3) the expert's opinion must relate to the facts. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000).

### B. Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts

showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252.

3

## II. DISCUSSION

### A. PDIC's Motion to Exclude Certain Testimony of Adobe's Experts

PDIC moves to exclude certain opinions of Dr. Andrew B. Lippman, Adobe's expert on liability, and Dr. Stephen L. Becker, Adobe's damages expert. PDIC contends that both experts' opinions improperly rely on letters and declarations that are inadmissible hearsay. PDIC raises additional challenges specific to each expert, contending that Dr. Lippman should not be allowed to testify about a Wayback Machine investigation, Defendants' activities, or Scene7, and that Dr. Becker should not be permitted to testify about Defendants' activities or restitution. The Court disagrees with each of PDIC's positions and will deny PDIC's motion.[2]

### 1. Reliance on Letters and Declarations

PDIC first contends that both experts' use of hearsay documents is improper. Federal Rule of Evidence 703 "permits experts to rely on hearsay so long as that hearsay is of the kind normally employed by experts in the field." *In re TMI Litig.*, 193 F.3d 613, 697 (3d Cir. 1999). The Court finds Drs. Lippman and Becker's use of alleged hearsay here to be compliant with Rule 703 and, hence, permissible. *See Inline Connection Corp. v. AOL Time Warner Inc.*, 470 F. Supp. 2d 435, 442 (D. Del. 2007).

Dr. Lippman was "asked to review and analyze the evidence that PDIC considered in preparing to file lawsuits asserting infringement of the '056 patent against Adobe's customers" and "to assess and evaluate PDIC's contentions that infringement by Adobe's customers occurs at the web server and does not involve an Adobe product." (D.I. 197 Ex. 8 at ¶ 18) To form his

---

[2]Adobe contends that PDIC failed to comply with Local Rule 7.1.1, which it views as fatal. (D.I. 199 at 19) As PDIC's motion was filed in compliance with the scheduling order (D.I. 106 at 3), and as the Court is denying it, the Court will consider the motion on the merits.

4

opinions, Dr. Lippman considered evidence of record, including testimony from Thomas and William Meagher about PDIC's presuit investigation (*see id.* at ¶ 19), as well as letters and declarations from Defendants about how their technology worked (*see id.* at ¶¶ 84-85). In forming his opinions, Dr. Lippman reasonably relied on relevant evidence produced by the parties. The Court is persuaded that this is a type of evidence on which an expert in the field providing an opinion on these topics would rely. *See TMI Litig.*, 193 F.3d at 697.

The same is true with respect to Dr. Becker. Dr. Becker was asked "to offer expert opinions on the amount of damages suffered by Adobe as a result of PDIC's breach of the covenant not to sue provision of the Adobe License." (D.I. 197 Ex. 6 at ¶ 3) His report includes communications between the parties during the relevant period. For example, Dr. Becker cites to various Defendants' requests to Adobe for indemnification. (*See, e.g., id.* at ¶ 44) Dr. Becker's reliance on the letters and declarations is permissible. He was tasked with determining the damages attributable to PDIC's alleged breach, making it entirely reasonable to examine the events and communications between the parties. This is a type of evidence on which a damages expert ordinarily relies.

It is a separate question whether evidence underlying the experts' opinions is admissible and may be presented to the jury. The Court does not at this point resolve this question. It is enough to find, as the Court does, that even if the letters and declarations are hearsay, and even if they are not admitted at trial, "their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect," rendering them proper for the jury to consider in evaluating the credibility of the experts, consistent with Rule 703. Although this evidence consists of documents that resulted from litigation and were "prepared in an adversarial context"

5

(D.I. 195 at 7), these characteristics do not (here) result in unfair prejudice to PDIC, particularly as the entire basis for Adobe's claim is that PDIC breached its contract by engaging in adversarial litigation against Adobe's customers. It is not unfair for Adobe to use documents stemming from that allegedly breaching conduct, i.e., the patent infringement suits.

### 2. Dr. Lippman

None of PDIC's specific attacks on Dr. Lippman's opinions provide a meritorious basis for exclusion. PDIC contends that Dr. Lippman's expert report does not adequately disclose an investigation using the Wayback Machine (a publicly-available internet archive) or the results of that investigation. Dr. Lippman's report, however, details PDIC's pre-suit investigation using the Wayback Machine (*see* D.I. 197 Ex. 8 at ¶¶ 58-64), describes various types of metadata associated with images that allows for identification of the software used to create an image (*see id.* at ¶¶ 117-22), and describes what information PDIC could have gleaned from its Wayback Machine investigation had it looked at metadata (*see id.* at ¶¶ 136-37). In his deposition, Dr. Lippman testified that he did some Wayback Machine searches "to see if [he] could determine the source of those images." (D.I. 197 Ex. 7 at 43) Dr. Lippman's report fairly discloses the theory on which he relies (*see, e.g.*, D.I. 197 Ex. 8 at ¶ 137), and his deposition testimony shows that he performed some minimum, additional tests to confirm the veracity of his opinion. While PDIC characterizes this additional testing as irrelevant, since "Dr. Lippman reviewed merely a handful of images on selected websites" (D.I. 195 at 8), PDIC is free to cross-examine Dr. Lippman on these issues at trial.

PDIC next contends that Dr. Lippman should not be allowed to testify that any of the Defendants used any particular technology because his opinion was formed on the basis of

inadmissible letters and declarations. This argument is simply a repeat of PDIC's general argument that the experts cannot rely on hearsay in forming their opinions, and the Court rejects it for the same reasons as given above.

Finally, PDIC asserts that Dr. Lippman cannot properly testify about Scene7, contending that he has no personal knowledge of its functionality as of 2007. Dr. Lippman, a Ph.D. electrical engineer and a senior research scientist at MIT (*see* D.I. 197 Ex. 8 at ¶¶ 2-16), is qualified to offer an opinion here, and his report describes Adobe's acquisition of Scene7, general Scene7 capabilities, and his opinion that use of Scene7 was licensed (*see, e.g., id.* at ¶¶ 31, 94-95). Any alleged shortcoming or deficiency in Dr. Lippman's opinion is an issue of weight and credibility appropriately addressed through cross-examination and/or the presentation of contrary evidence.

### 3. Dr. Becker

PDIC contends that "Dr. Becker's expert report indicates a possibility that he intends to testify that some or all of the Defendants had been using Adobe Products in order to provide the enlarged or on-the-fly images on their websites," which PDIC asserts is inappropriate because Dr. Becker has no personal knowledge of the technology. (D.I. 195 at 11) PDIC does not, however, identify any specific portions of Dr. Becker's report that it is challenging. Accordingly, Dr. Becker will be allowed to testify consistent with the opinions expressed in his expert report.

PDIC also contends that Dr. Becker's understanding of restitution is contrary to New Jersey law. Although there is no indication that Dr. Becker's understanding of how to measure restitution is inconsistent with governing law, the Court need not reach this issue. As discussed below, the Court finds that restitution is not an available remedy in this case.

7

## B. PDIC's Motion for Summary Judgment

Under New Jersey law, which the Court has determined governs the agreement between PDIC and Adobe, *see Princeton Digital Image Corp. v. Office Depot Inc.*, 2016 WL 1533697, at *6 (D. Del. Mar. 31, 2016), a party asserting breach of contract must show that: (1) a contract existed between the parties; (2) the defendant breached a duty imposed by the contract, (3) the plaintiff performed its obligations under the contract, and (4) the plaintiff was damaged as a result of the breach. *See Miller v. Butler*, 2014 WL 585409, at *3 (D.N.J. Feb. 14, 2014). PDIC moves for summary judgment on the basis that Adobe cannot show that PDIC breached the contract or that Adobe is entitled to damages for any breach. PDIC also seeks to eliminate restitution as a potential alternative theory of Adobe's recoverable damages.

### 1. Breach of Contract

The parties' agreement "grants to Adobe and Adobe Related Entities an irrevocable, unrestricted, fully paid-up, perpetual covenant not to sue Adobe or Adobe Related Entities with respect to any and all past and present claims . . . based on any of the Princeton patents." (D.I. 196 Ex. 1 at ¶ 3.1) Further, "[t]he covenant not to sue exhausts all claims of all Princeton Patents . . . as to any Licensed Product to the extent that the claims arose in whole or part owing to an Adobe Licensed Product." (*Id.*) Adobe alleges that PDIC breached this covenant not to sue by bringing infringement actions against Defendants, who are Adobe's customers using Adobe products.

PDIC contends that summary judgment is appropriate because Adobe cannot demonstrate that PDIC breached the contract. In particular, PDIC asserts that it "never alleged any infringement against any Adobe product or service, and did not accuse any Defendant of

8

infringement based on that Defendant's use of an Adobe product or service." (D.I. 193 at 6) Moreover, PDIC argues that Adobe cannot prove that any Defendant actually used Adobe products or services in performing the allegedly infringing acts.

In opposing summary judgment, Adobe contends that PDIC's infringement allegations were written broadly and that PDIC's own statements acknowledge that the complaints can be read to cover Adobe products. Adobe asserts that there is sufficient evidence of record to conclude that Defendants did use Adobe products. Further, according to Adobe, PDIC's contention that Defendants used non-Adobe products is merely speculative and is disputed by Adobe's expert.

The Court agrees with Adobe that there are genuine issues of material fact precluding summary judgment. A reasonable juror could accept Adobe's view that PDIC's infringement allegations – which generally accused Defendants of infringement based on their "encod[ing] image data in JPEG files for purposes of producing JPEG images of products" (D.I. 1 at ¶ 9) – cover the use of Adobe products. A reasonable juror could also conclude that Defendants did, indeed, use Adobe products, based on Adobe's expert and PDIC's admissions. (*See* D.I. 197 Ex. 8 at ¶¶ 135-40; D.I. 73 at 1 ("[T]hree Defendants appear to have used solely Adobe's Scene7 software for the activities accused of infringement . . . .")) There are also genuine factual disputes about PDIC's theory of Defendants' use of non-Adobe products, which a jury will have to resolve by weighing evidence and evaluating witness credibility. (*See* D.I. 181 Ex. 1 at 190-91; D.I. 197 Ex. 8 at ¶ 135)

Accordingly, the Court cannot grant summary judgment based on the purported failure to adduce evidence sufficient to support a reasonable finding of breach.

## 2. Damages

### a. Attorney Fees

Adobe seeks consequential damages stemming from PDIC's alleged breach, claiming that appropriate damages include both attorney fees incurred in defending Defendants against infringement ("defense fees") and attorney fees incurred in pressing Adobe's breach of contract claims ("affirmative fees"). PDIC contends that the American Rule, and New Jersey application of that Rule, prevents Adobe from claiming any attorney fees as consequential damages. PDIC also asserts that even if defense fees are a proper measure of damages, Adobe cannot prove the amount of its defense fees because its expert has not separated defense fees from affirmative fees.

Under New Jersey contract law, "a party who breaches a contract is liable for all of the natural and probable consequences of the breach of that contract." *Pickett v. Lloyd's*, 621 A.2d 445, 454 (N.J. 1993) "In the absence of a contrary agreement, an injured party with the legal right to be compensated for the breach of a contract is entitled to the amount of damages . . . which, ***excluding attorneys' fees and court costs for prosecuting the breach of contract action itself***, will put that party in the same position it would have been in if the breaching party had performed the contract in accordance with its terms, no better position and no worse." *Magnet Res., Inc. v. Summit MRI, Inc.*, 723 A.2d 976, 985 (N.J. Super. Ct. App. Div. 1998) (emphasis added). Accordingly, consistent with the American Rule that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser," *N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 730 A.2d 843, 848 (N.J. 1999), attorney fees incurred in bringing a breach of contract action "are not normally a proper measure of contract damages," *New Flyer of Am., Inc. v. Mid-Newark, L.P.*, 2010 WL 2794249, at *6 (N.J. Super. Ct. App. Div. July 6, 2010).

Otherwise, attorney fees would be consequential damages in nearly every contract claim, as one natural and probable consequence of a breached contract is that a party will bring a lawsuit. *See id.* at *7.

Courts have recognized exceptions to this general rule, often involving circumstances in which a non-breaching party engages in legal proceedings as a result of the breached contract, apart from the breach of contract suit. For example, a breach of a covenant not to sue may result in an underlying suit (i.e., the suit that breaches the contract), as well as a breach of contract suit. Attorney fees may be "a proper element of damages when the right violated is the right to be free from suit." *Riveredge Assocs. v. Metro. Life Ins. Co.*, 774 F. Supp. 897, 901 (D.N.J. 1991). But courts generally limit damages under this theory to those "attorneys' fees and other costs of ***defending against a wrongful action***." *Id.* at 902 (emphasis added); *Gerhardt v. Cont'l Ins. Cos.*, 225 A.2d 328, 334 (N.J. 1966) ("Since the insurer defaulted on its obligation to defend the insured in the workmen's compensation proceeding, it must bear, as a traditional element of damage, the expense including the reasonable counsel fee incurred by the insured in defending there in its stead."); *Verhagen v. Platt*, 61 A.2d 892, 895 (N.J. 1948) ("If a breach of contract is the cause of litigation between the plaintiff and third parties that the defendant had reason to foresee when the contract was made, the plaintiff's reasonable expenditures in such litigation are included in estimating his damages."); *see also Am. Home Assur. Co. v. United Space All., LLC*, 378 F.3d 482, 490 (5th Cir. 2004) ("[T]he recovery of attorney's fees in such circumstances are appropriately based upon the equitable ground that the claimant was required to defend against litigation as a consequence of the wrongful conduct of the defendant."); *Anchor Motor Freight, Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 700 F.2d 1067,

11

1072 (6th Cir. 1983) ("The Union is not precluded . . . from recovering costs incurred in defending against an action filed in breach of a covenant not to sue."); *Prospect Energy Corp. v. Dallas Gas Partners, LP*, 761 F. Supp. 2d 579, 595-96 (S.D. Tex. 2011) ("When a covenant not to sue is used offensively in a counterclaim for breach of contract, the counterclaimants' attorneys' fees cannot be considered actual damages, but are incidental costs of litigation.").

Because this exception displaces the strong background presumption that parties will carry their own costs in litigation, some courts have also limited these damages to those that arise from an obvious or bad-faith breach of a covenant not to sue (unless there is an indication that the parties intended for the contract to award other damages). *See Riveredge*, 774 F. Supp. at 902 ("If the covenant breached is a promise not to file suit in bad faith, then the logical measure of damages is the direct consequence of breach of that right: the costs of defending the wrongful suit."); *see also Lubrizol Corp. v. Exxon Corp.*, 957 F.2d 1302, 1306-07 (5th Cir. 1992) ("Lubrizol's breach of the parties' covenant not to sue was obvious and . . . the district court rightfully imposed liability"); *Cefali v. Buffalo Brass Co.*, 748 F. Supp. 1011, 1027 (W.D.N.Y. 1990) ("[W]hether fees should be awarded therefore depends on whether the suit was brought 'in obvious breach or otherwise in bad faith.'"). Although not all courts have adopted this view, *see, e.g., Widener v. Arco Oil & Gas Co., Div. of Atl. Richfield Co.*, 717 F. Supp. 1211, 1217 (N.D. Tex. 1989), the parties identify no authority directly on point, and at least two federal courts predicting New Jersey law on this issue have applied the bad-faith or obvious breach requirement. *See Riveredge*, 774 F. Supp. at 902 (requiring showing of bad faith for attorney fee award on implied covenant not to sue); *Borbely v. Nationwide Mut. Ins. Co.*, 547 F. Supp. 959, 980 (D.N.J. 1981) (requiring showing of bad faith for attorney fee award on express covenant not

12

to sue). The "primary function" of a covenant not to sue "is to serve as a shield rather than as a sword." *Artvale, Inc. v. Rugby Fabrics Corp.*, 363 F.2d 1002, 1008 (2d Cir. 1966). Thus, "[i]n the absence of contrary evidence, sufficient effect is given the usual covenant not to sue if, in addition to its service as a defense, it is read as imposing liability only for suits brought in obvious breach or otherwise in bad faith." *Id.*

Applying this law here, the Court agrees with PDIC that Adobe cannot collect as damages for the breach of contract any attorney fees Adobe incurred in the affirmative breach-of-contract suit. These affirmative fees are not fees that arose because Adobe had to "defend[] against a wrongful action," *Riveredge*, 774 F. Supp. at 902, but are instead the classic type of attorney fees that Adobe, in attempting to vindicate its contract rights, must bear itself. There is no indication that the parties agreed to an arrangement inconsistent with this general presumption.

However, the defense fees – that is, those Adobe incurred in defending Defendants from PDIC's infringement suit, suits that were brought in alleged violation of the covenant not to sue – are the type of fees that may be awarded as damages. Adobe's legal costs in defending its customers are a proper measure of the harm to Adobe caused by PDIC's alleged breach.

Adobe has adduced evidence from which a reasonable factfinder may find that PDIC's breach of the covenant not sue was obvious or in bad faith. The Court reaches this conclusion despite the fact that, in earlier declining to award fees or sanctions under 35 U.S.C. § 285, Rule 11, 28 U.S.C. § 1927, and its inherent authority, the Court found "that PDIC was not pursuing these actions in bad faith or for an improper purpose." *Princeton Digital*, 2016 WL 1533697, at *17-18. The standards for awarding sanctions differ from those governing whether a party "may seek damages for having to defend against that suit," with the latter being less stringent.

13

*Riveredge*, 774 F. Supp. at 900.³

Nor is the Court persuaded that Adobe cannot disaggregate its defense fees from its affirmative fees. Adobe has produced evidence breaking down its attorney fees and costs by date, attorney, hourly rate, and hours worked. (*See* D.I. 200 Exs. 10-13, 20) Adobe's damages expert, Dr. Becker, indicated that this evidence is sufficiently detailed such that he could separate the defense fees and affirmative fees if so required. (*See* D.I. 200 Ex. 9 at 124-25) By separate order, the Court will direct Adobe to serve a supplemental expert report relating to the revised amount of damages Adobe is seeking in light of today's rulings.

Accordingly, the Court will grant in part and deny in part PDIC's motion for summary judgment on attorney fees as damages.

### b. Restitution

Adobe alternatively seeks restitution, amounting to the $200,000 license fee Adobe paid to PDIC. PDIC contends that Adobe cannot claim restitution damages here because there has not been a "total" breach of the contract.

New Jersey has adopted the Restatement (Second) of Contracts' approach to restitution,

---

³Even if this were not the case, the Court would not view itself as bound by "law of the case doctrine" and compelled to grant summary judgment to PDIC. "Reconsideration of a previously decided issue may . . . be appropriate in certain circumstances, including when the record contains new evidence." *Hamilton v. Leavy*, 322 F.3d 776, 787 (3d Cir. 2003). The sanctions decision was made relatively early in the case, before significant discovery on the breach of contract issue had taken place. In connection with the sanctions decision, the Court "accepted Mr. Meagher's representations as true" on certain points, *Princeton Digital*, 2016 WL 1533697, at *14-15, something a jury would not be obligated to do. Further, the Court noted in connection with its sanctions decision that Adobe had not presented "any evidence – expert or otherwise – to challenge the merits of [PDIC's] infringement theory," *id.* at *15, but Adobe has now done so (*see, e.g.*, D.I. 197 Ex. 8). *See also generally Speeney v. Rutgers*, 369 Fed. App'x 357, 360-61 (3d Cir. 2010) ("[L]aw of the case doctrine only precludes relitigation of issues that the parties had a full and fair opportunity to litigate.").

*see Kutzin v. Pirnie*, 591 A.2d 932, 941 (N.J. 1991), which entitles the non-breaching party to damages "for any benefit that he has conferred on the other party by way of part performance or reliance," Restatement (Second) of Contracts § 373(a). The Restatement (Second) also provides that "restitution is available only if the breach gives rise to a claim for damages for total breach and not merely to a claim for damages for partial breach." *Id.* at cmt. a; *see also Hansen Bancorp Inc. v. United States*, 367 F.3d 1297, 1309 (Fed. Cir. 2004). A total, or material, breach "is one that 'goes to the essence of the contract,'" *Miller v. Butler*, 2014 WL 585409, at *6 (D.N.J. Feb. 14, 2014), and whether a breach is material is a question of fact for the jury, *Magnet Res.*, 723 A.2d at 982. "When one party commits a material breach of contract, the other party has a choice between two inconsistent rights – it can either elect to allege a total breach, terminate the contract and bring an action or, instead, elect to keep the contract in force, declare the default only a partial breach, and recover those damages caused by that partial breach." 13 Williston on Contracts § 39; *see also Dover Shopping Ctr., Inc. v. Cushman's Sons, Inc.*, 164 A.2d 785, 790 (N.J. Super. Ct. App. Div. 1960).

Here, Adobe fully performed its obligation under the contract by paying $200,000 to PDIC. (*See* D.I. 196 at ¶ 4.1) PDIC's obligations under the contract included a covenant not to sue (*see id.* at ¶ 3), and the Court has already explained above that the record permits a reasonable factfinder to find that PDIC breached that covenant by suing Defendants. The record further contains sufficient evidence from which a reasonable jury could find that this breach was material – for instance, multiple sections of the contract detail the license and covenant not to sue (*see id.* at ¶¶ 2-3), and Adobe evidently viewed the covenant as a necessary provision (*see* D.I. 200 Ex. 15 at 1). Even so, even if the record permits a finding of material breach by PDIC, a

15

reasonable factfinder could only find that Adobe, nonetheless, elected to keep the contract in force and attempt to recover damages for PDIC's partial breach. Adobe's complaint alleges that "Adobe has a valid and enforceable license to the '056 Patent." (D.I. 47 at ¶ 37) Furthermore, Adobe's requested relief includes "[a]n order enjoining [PDIC] from suing or maintaining suit against other Adobe customers and end users based on their use of Adobe licensed products and services, alone or in combination with other technology." (*Id.* at 10) That is, Adobe is asking the Court to enforce the contract, and not to treat Adobe's actions as a total breach. It follows, pursuant to New Jersey law and the Restatement, that restitution is not available to Adobe.

Accordingly, the Court will grant PDIC's motion for summary judgment that restitution is not available as a remedy.

## III. CONCLUSION

For the foregoing reasons, the Court will deny PDIC's motion to exclude certain expert opinions and grant in part and deny in part PDIC's motion for summary judgment on Adobe's breach of contract claim. An appropriate Order follows.