# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PRINCETON DIGITAL IMAGE CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> OFFICE DEPOT INC., <br><br> Defendant. | C.A. No. 13-239-LPS |
| PRINCETON DIGITAL IMAGE CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> J.C. PENNEY COMPANY, INC., <br><br> Defendant. | C.A. No. 13-287-LPS |
| PRINCETON DIGITAL IMAGE CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> QVC INC., <br><br> Defendant. | C.A. No. 13-288-LPS |
| PRINCETON DIGITAL IMAGE CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> SEARS HOLDINGS COMPANY, <br><br> Defendant. | C.A. No. 13-289-LPS |

| PRINCETON DIGITAL IMAGE CORPORATION, | : | |
|---|---|---|
| Plaintiff, | : | |
| v. | : | C.A. No. 13-326-LPS |
| LIMITED BRANDS, INC., | : | |
| Defendant. | : | |
| PRINCETON DIGITAL IMAGE CORPORATION, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 13-330-LPS |
| GAP INC., | : | |
| Defendant. | : | |
| PRINCETON DIGITAL IMAGE CORPORATION, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 13-331-LPS |
| WILLIAMS-SONOMA INC., | : | |
| Defendant. | : | |
| PRINCETON DIGITAL IMAGE CORPORATION, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 13-404-LPS |
| COSTCO WHOLESALE CORP., | : | |
| Defendant. | : | |

| | :|
|---|---|
| PRINCETON DIGITAL IMAGE CORPORATION, | : |
| Plaintiff, | : |
| v. | : C.A. No. 13-408-LPS |
| NORDSTROM.COM LLC, NORDSTROM.COM INC., and NORDSTROM INC. | : |
| Defendants. | : |

## MEMORANDUM ORDER

At Wilmington this 17th day of August, 2017, having reviewed the parties' briefs on Adobe's motion to disqualify PDIC's counsel Sean O'Kelly (D.I. 240, 246, 256), PDIC's motion to strike the supplemental expert report of Dr. Becker (D.I. 241, 247, 257), and PDIC's motion for summary judgment (D.I. 234), as well as additional briefing recently filed by the parties,[1]

IT IS HEREBY ORDERED that:

1. Adobe's motion to disqualify Mr. O'Kelly (D.I. 240) is GRANTED.

2. The Court has the inherent authority to supervise the professional conduct of attorneys appearing before it, including the power to disqualify an attorney from a representation. *See United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). Motions to disqualify are "generally disfavored" and, therefore, require the moving party to show clearly that "continued representation would be impermissible." *Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*, 491 F. Supp. 2d 510, 513 (D. Del. 2007). However, because "[t]he maintenance of public confidence

---

[1]All references to the docket index ("D.I.") are to C.A. No. 13-239, unless otherwise noted.

1

in the propriety of the conduct of those associated with the administration of justice is so important," a court may disqualify an attorney "for failing to avoid even the appearance of impropriety." *Kabi Pharmacia AB v. Alcon Surgical, Inc.*, 803 F. Supp. 957, 960 (D. Del. 1992). Resolving the question of whether to disqualify counsel requires the Court to "carefully sift all the facts and circumstances," *Nemours Found. v. Gilbane, Aetna, Fed. Ins. Co.*, 632 F. Supp. 418, 423 (D. Del. 1986) (internal quotation marks omitted), which the Court approaches with "cautious scrutiny," mindful of a litigant's right to the counsel of its choice, *Laker Airways, Ltd. v. Pan Am. World Airways*, 103 F.R.D. 22, 28 (D.D.C. 1984).

3. Attorney conduct is governed by the ethical standards of the court before which the attorney appears. *See In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984). The District of Delaware has adopted the Model Rules of Professional Conduct of the American Bar Association ("Model Rules"). *See* D. Del. LR 83.6(d). Applicable here is Model Rule 3.7(a), which provides:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.

4. The Court finds that Mr. O'Kelly, PDIC's trial counsel, is likely to be a necessary witness at trial and does not fall into one of the exceptions of Rule 3.7(a).[2] Mr. O'Kelly appears on both PDIC and Adobe's "may call" witness lists and has personal knowledge of relevant facts, including about PDIC's conduct before and after filing the infringement suits, which is probative

---

[2]Although PDIC expressed some concerns about Adobe's lead trial counsel, Ms. Elliott (D.I. 239), PDIC did not request any relief from the Court (D.I. 249), despite being provided an express opportunity to do so (D.I. 245).

2

of whether PDIC breached the covenant-not-to sue and whether any such breach was in good or bad faith. Mr. O'Kelly also has unique, first-hand knowledge about the cases that PDIC's other witnesses, including Mr. Meagher, do not. (*See* D.I. 256 at 2; D.I. 190 Ex. 2 at 45)[3] With respect to the exceptions set out in Rule 3.7(a), Mr. O'Kelly's testimony does not relate to an uncontested issue or the nature and value of legal services. Nor is the Court persuaded that Mr. O'Kelly's disqualification will work substantial hardship on PDIC. Mr. Pazuniak has been lead (and often seemingly sole) counsel for PDIC since 2015 and can continue to serve in that role. Further, while Mr. O'Kelly will not be permitted to sit at counsel table or have a presence in the courtroom distinct from that of other fact witnesses, the Court's decision today does not preclude him from providing out-of-court assistance to Mr. Pazuniak. Finally, while the Court recognizes that disqualification is not commonly warranted, and that attempts to disqualify trial counsel on the eve of trial may often be reflective of bad faith, here it is plain that Adobe has proceeded in good faith with respect to this sensitive issue and, for the reasons explained above, its motion is meritorious.[4]

---

[3] PDIC appears to recognize that Mr. O'Kelly may have unique information, but it contends that such evidence is irrelevant, as the only moment that is relevant to Adobe's breach-of-contract claim is when the suits against Adobe's customers were filed. (*See* D.I. 246 at 2) ("If the covenent not to sue was breached, the breach could only have occurred when the cases were filed. The conduct of the litigation, which is all that Adobe refers to in its motion, cannot constitute a breach of the Agreement as a matter of law . . . .") But the conduct of the litigation – and, more generally, the thought processes and actions (taken and not taken) before and after the filing of the lawsuits – is relevant, as that evidence is probative of whether PDIC committed a breach and whether such breach was in bad faith or obvious. Thus, the Court agrees with Adobe that "this case is about whether PDIC breached the agreement through the filing of lawsuits against Adobe customers, including PDIC's actions (or inactions) both ***before and after*** filing suit." (D.I. 256 at 1)

[4] While Rule 3.7(a) is itself a sufficient and compelling basis for disqualifying Mr. O'Kelly, the Court further agrees with Adobe's explanation of the reasoning for the Rule and

5. PDIC's motion to strike Dr. Becker's supplemental report (D.I. 241) is GRANTED.

6. In determining whether to exclude evidence such as an expert report, the Court may consider: (1) the importance of the information withheld; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the likelihood of disruption of the trial; (4) the possibility of curing the prejudice; (5) the explanation for the failure to disclose; and (6) the presence of bad faith or willfulness in not disclosing the evidence (the "*Pennypack* factors"). *See Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977)). Generally, "exclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994) (internal quotation marks omitted). The determination of whether to exclude evidence is committed to the discretion of the Court. *See id.* at 749.

7. The Court agrees with PDIC that Dr. Becker's supplemental report is not compliant with the Court's summary judgment opinion (D.I. 220) and the order accompanying it, which directed Adobe to serve a supplemental expert report consistent with the Court's rulings (D.I. 221). In the summary judgment opinion, the Court made clear that "Adobe cannot collect

---

why it is important to enforce it here. "Mr. O'Kelly's dual role will only serve to confuse or mislead the jurors who, unlike a judge, may find it difficult to distinguish between the role of a fact witness and the role of counsel. . . . Even if Mr. O'Kelly does not testify, it is too prejudicial for him to serve as an advocate while his name and representations on behalf of PDIC are at the epicenter of the disputes to be tried, replete in the record, and will be assessed by the jury as party admissions." (D.I. 240 at 3)

4

as damages for the breach of contract any attorney fees Adobe incurred in the affirmative breach-of-contract suit," finding these fees to be "the classic type of attorney fees that Adobe, in attempting to vindicate its contract rights, must bear itself." (D.I. 220 at 13) The Court also held that Adobe may be entitled recover as breach-of-contract damages its "defense fees – that is, those Adobe incurred in defending Defendants from PDIC's infringement suit[s], suits that were brought in alleged violation of the covenant not to sue." (*Id.*) Because Adobe indicated that "Dr. Becker could split out Adobe's damages" (D.I. 198 at 19) – i.e., separate out affirmative fees from defense fees – the Court exercised its discretion to provide Adobe the opportunity to "disaggregate its defense fees from its affirmative fees" (D.I. 220 at 14).

8. Dr. Becker's supplemental report does not separate Adobe's defense fees from its affirmative fees. Instead, Dr. Becker presents a damages theory – for the first time – "that as long as there were cases pending against Adobe customers who formally requested indemnification and/or defense from an infringement suit filed by PDIC, Adobe's legal fees were incurred in furtherance of its ongoing efforts to get PDIC to dismiss the wrongfully filed lawsuits, and are thus 'defense fees' under the Court's recent order." (D.I. 250 Ex. A at ¶ 7) Dr. Becker then concludes that all legal fees incurred by Adobe through December 7, 2016 are defense fees. (*Id.* at ¶¶ 7-8) This analysis does not separate defense fees from affirmative fees but merely claims all fees as defensive so long as they were incurred while at least one Defendant (who requested indemnification) was still involved in litigation with PDIC. The Court, in its summary judgment opinion, rejected Adobe's all-or-nothing approach to damages. But Dr. Becker's supplemental report simply reprises that approach with an earlier cutoff date. Thus, Dr. Becker's report – which does not separate defense and affirmative fees, does not review whether

5

the fees claimed before December 6, 2016 were incurred in defending against the underlying infringement suits, and merely opines in conclusory fashion that all fees through December 6 should be considered defense fees – does not comply with the Court's order to serve a report identifying only defense fees.

9. Furthermore, the *Pennypack* factors favor excluding Dr. Becker's supplemental report.[5] Dr. Becker's failure to separate defense fees from affirmative fees was willfully noncompliant with the Court's order. Adobe has provided no meritorious, persuasive explanation for its failure. Further, Dr. Becker presents a new theory of what purportedly constitutes defense damages – a theory Adobe did not articulate in its summary judgment papers – which, if presented at trial (scheduled to begin less than four days from now), would unfairly surprise and prejudice PDIC and/or disrupt the long-scheduled trial. While the supplemental report is surely important evidence, the Court does not perceive a way to cure the unfair prejudice to PDIC in any manner other than to preclude Dr. Becker from testifying to the opinions in the supplemental report; nor has Adobe proposed an alternative cure.

10. Adobe's contention that Dr. Becker's report is compliant with the Court's order is predicated, at least in part, on Adobe's view that New Jersey law allows a party to recover affirmative fees as defense fees when the fees are inextricably intertwined. This position is unavailing for numerous reasons. First, Dr. Becker does not actually opine that the defense fees and affirmative fees Adobe incurred are inextricably intertwined, that "any precise allocation of expenses [as between affirmative and defense fees] would be impossible," or anything similar.

---

[5]Despite PDIC's contention that the *Pennypack* factors are not relevant (D.I. 257 at 2), the Court explicitly ordered the parties (at the pretrial conference) to address those factors in the motion to strike briefing.

6

*Voorhees v. Preferred Mut. Ins. Co.*, 588 A.2d 417, 425 (N.J. Super. Ct. App. Div. 1991); *see also Diamond v. John Martin Co.*, 753 F.2d 1465, 1467 (9th Cir. 1985) ("[A]lthough time-keeping and billing procedures may make a requested segregation difficult, they do not, without more, make it impossible."). Thus, Dr. Becker's supplemental report – even if it were not stricken – provides no basis on which a reasonable juror could find that all of Adobe's fees before December 7, 2016 are defense fees.

11. Moreover, the Court does not agree with Adobe's conclusions about New Jersey law. (*See* D.I. 243, 248, 255) The cases on which Adobe relies do not address the pertinent question: does New Jersey law permit a party to recover the attorney fees that party incurs in an affirmative action (by which that party seeks to recover money damages) when those affirmative fees are "inextricably intertwined" with fees that same party incurred in connection with defending (itself or others; a "defense" which may include prosecuting counterclaims in the "defensive" action) in other litigation. Almost all of Adobe's cases arise in the insurance context (which appears to be a relevant distinction) – and, more importantly, they all use the labels "affirmative" and "defensive" in a different manner than is pertinent here. Adobe has shown that in the insurance context, courts (including those applying New Jersey law) have held that an insurance company with a duty to defend an insured in an underlying action involving a third-party may be obligated to pay for the insured's legal fees ***arising from that underlying litigation*** – which includes both "defense fees" (associated with the insured being sued by a third party) and "affirmative fees" (associated with the insured asserting a counterclaim in the underlying litigation against a third party) when those fees are inextricably intertwined with one another. *See, e.g., Voorhees*, 588 A.2d at 419, 425; *Safeguard Scis., Inc. v. Liberty Mut. Ins. Co.*,

7

766 F. Supp. 324, 333-34 (E.D. Pa. 1991). Here, the Court determined in the summary judgment opinion that Adobe is potentially entitled to all fees arising from the *underlying* infringement actions (which the Court calls defense fees) but *no fees* arising from Adobe's breach-of-contract claim (which the Court calls affirmative fees). (*See* D.I. 220 at 10-14) That the breach-of-contract fees were incurred in the same lawsuits as the defense fees (due to Adobe being permitted to intervene in the underlying infringement actions and its decision to file a complaint in intervention asserting breach-of-contract) does not change the fundamental fact that New Jersey law does not permit Adobe to recover fees incurred in pursuing its affirmative, breach-of-contract claim. What Adobe is attempting to achieve is analogous to an insured seeking to recover the attorney fees the insured incurs *in the action the insured files against the insurer* arising from the insurer's breach of contract in not paying the insured's attorney fees incurred in an underlying action with a third party. Adobe has pointed the Court to no case applying New Jersey law that authorizes such a recovery. (*See* D.I. 257 at 2) (PDIC: "No case cited by Adobe [or] other authority suggests that fees generated to provide a monetary recovery for Adobe can be viewed as defensive, regardless of any potential incidental benefit or relatedness to other issues.") And Adobe's attempt to recover such affirmative fees, even if inextricably intertwined with defense fees, is precluded by the Court's summary judgment opinion.[6]

12. Given that the Court has stricken Dr. Becker's supplemental report, the Court turns to PDIC's latest motion for summary judgment (D.I. 234), which the Court DENIES. PDIC

---

[6]Adobe also cites cases involving fee-shifting statutes, which are explicit rejections of the American Rule. *See Diamond*, 753 F.2d at 1466; *Norton v. Wilshire Credit Corp*, 36 F. Supp. 2d 216, 218 (D.N.J. 1999); *Arthur D. Little Int'l, Inc. v. Dooyang Corp.*, 995 F. Supp. 217, 221 (D. Mass. 1998). But Adobe does not invoke a fee-shifting statute to support its claimed damages.

8

contends that "[w]ithout that report, there can be no record to support Adobe's damage claims." (*Id.* at 7) Relatedly, PDIC asserts that Dr. Becker "is the only witness identified in the pretrial order to testify that Adobe's claimed fees were reasonable and appropriate, or on damages generally," and that the "pretrial order [does] not identify any record by which Adobe can now make a damage claims consistent with the Court's Order." (*Id.* at 7-8) The Court disagrees. There is sufficient evidence of record of Adobe's purely defensive fees, including Adobe's billing records, on which a reasonable juror could find that Adobe has proven the damages element of its breach-of-contract claim. Further, Adobe explained at the pretrial conference that Dana Rao, its Rule 30(b)(6) witness, could testify about Adobe's legal fees and identify those that are defense fees. Accordingly, it is appropriate to deny summary judgment.

13. Having stricken Dr. Becker's supplemental report and denied PDIC's motion for summary judgment, the more difficult question becomes how to proceed from here. Although the Court agrees with Adobe that there is sufficient evidence in the record to determine the amount of Adobe's fees that are purely defense fees, the total amount of defense fees that Adobe asserts as damages (i.e., the actual bottom-line total dollar figure) is not in the record, and Adobe has studiously avoided disclosing an amount that is consistent with the Court's rulings. It is also far too late to permit Adobe yet another opportunity to serve an expert report to support such a figure. However, because the Court is persuaded that there is factual evidence in the record (e.g., bills, Rao testimony) from which Adobe could prove it incurred some damages (i.e., defense fees), because PDIC has long had this evidence, and because both parties stated at the pretrial conference they wish to proceed to trial as scheduled (and have not subsequently asked for a continuance), the Court will exercise its discretion to permit Adobe one final opportunity to

supplement its damages disclosures.

14. Accordingly, by no later than noon on August 19, 2017, Adobe shall file a letter with the Court, copying PDIC, (i) disclosing the total amount (in dollars) of defense fees Adobe is seeking as breach-of-contract damages (i.e., only those fees that Adobe incurred in defending its customers in the infringement suits and ***no fees associated with Adobe's breach-of-contract claim***; defense fees that are "inextricably intertwined" with affirmative fees are ***not*** recoverable), and (ii) identifying with particularity the record bases (e.g., the specific legal bills) on which Adobe intends to rely to support its calculation of the amount of damages it is seeking.[7]

15. Provided that Adobe complies with the preceding paragraph of this Order, trial will begin, as scheduled, on Monday, August 21, 2017, with counsel appearing at 8:30 a.m. Each side will be allocated a total of seven (7) hours for its trial presentation, as the Court continues to believe that this amount of time will be more than adequate to permit each side a full and fair opportunity to present its case on the limited material issues in dispute.[8]

---

[7] The parties are reminded that any submissions made outside of normal business hours, including on weekends and holidays, must be accompanied by a courtesy copy sent to the following electronic mail address: Judge_Stark_Chambers@ded.uscourts.gov.

[8] To summarize, the Court's rulings on the pending motions are as follows: (1) Adobe's motion to disqualify Mr. O'Kelly (C.A. No. 13-239-LPS D.I. 240; C.A. No. 13-287-LPS D.I. 240; C.A. No. 13-288-LPS D.I. 240; C.A. No. 13-289-LPS D.I. 243; C.A. No. 13-326-LPS D.I. 241; C.A. No. 13-330-LPS D.I. 237; C.A. No. 13-331-LPS D.I. 239; C.A. No. 13-404-LPS D.I. 242; C.A. No. 13-408-LPS D.I. 255) is GRANTED; (2) PDIC's motion to strike Dr. Becker's supplemental expert report (C.A. No. 13-239-LPS D.I. 241; C.A. No. 13-287-LPS D.I. 242; C.A. No. 13-288-LPS D.I. 242; C.A. No. 13-289-LPS D.I. 240; C.A. No. 13-326-LPS D.I. 238; C.A. No. 13-330-LPS D.I. 240; C.A. No. 13-331-LPS D.I. 242; C.A. No. 13-404-LPS D.I. 240; C.A. No. 13-408-LPS D.I. 258) is GRANTED; and (3) PDIC's motion for summary judgment (C.A. No. 13-239-LPS D.I. 234; C.A. No. 13-287-LPS D.I. 234; C.A. No. 13-288-LPS D.I. 234; C.A. No. 13-289-LPS D.I. 233; C.A. No. 13-326-LPS D.I. 231; C.A. No. 13-330-LPS D.I. 231; C.A. No. 13-331-LPS D.I. 233; C.A. No. 13-404-LPS D.I. 232; C.A. No. 13-408-LPS D.I. 249) is DENIED.

_____
HON. LEONARD P. STARK
UNITED STATES DISTRICT JUDGE